UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER FOSTER, <br>     Plaintiff, | Case No. 1:18-cv-247 |
| vs. | Black, J. <br> Bowman, M.J. |
| DONNELL PERRY, *et al.*, <br>     Defendants. | **REPORT AND** <br> **RECOMMENDATION** |

Christopher Foster, an inmate at the Southern Ohio Correctional Facility (SOCF) and frequent filer in this Court,[1] brings this civil rights action against defendants Ohio Department of Rehabilitation and Correction, Gary Mohr, Roger Wilson, Southern Ohio Correctional Facility, and "All involved D.R.C. Staff." (Doc. 1-1, Complaint at PageID 45). This matter is before the Court on Foster's motion for leave to proceed *in forma pauperis*. (Doc. 1).

Foster purports to bring this case as the head of a class action.[2] He seeks to represent a

---

[1] In *Foster v. Ohio,* Case No. 1:16-cv-920 (S.D. Ohio Mar. 28, 2018) (Black, J.; Bowman, M.J.) (Doc. 98, p. 1 n.1), the undersigned recently provided the following summary of plaintiff's prolific filing in the state and federal courts:

> *See, e.g.*, Southern District of Ohio Case Nos: 1:14-cv-617; 1:14-cv-668; 1:14-cv-642; 1:15-cv-595; 1:15-cv-713; 1:16-cv-835;1:16-cv-846 and Northern District of Ohio Case Nos. 3:15-cv-404; 3:16-cv-658; 3:16-cv-2109; 3:16-cv-2168; 3:15-cv-2256; 3:16-cv-476; 3:16-cv-1535; 3:16-cv-1715. In addition, Plaintiff has filed at least fourteen cases in the Ohio Court of Claims alone, plus many additional cases in the Franklin Court of Common Pleas. Plaintiff has been sued by the Ohio Attorney General under Ohio Revised Code R.C. § 2323.52 for his vexatious litigation. *See Ohio State Attorney General Mike Dewine v. Christopher Foster*, Case No. 16-cv-2732. Plaintiff also has litigated five actions in the Ohio Supreme Court. (Doc. 80 at 5-6). Not only has Plaintiff filed a large number of cases, but he inundates the courts with motions in the cases that he pursues. In the undersigned's last R&R, I noted that Plaintiff had filed at least 29 motions in this case alone, (see Doc. 78, n.1). As of this writing, that number that has risen to 38 motions in this record alone, not including multiple non-motion filings. (See e.g., Docs. 76, 86, 87, 88, 92, 93, 94, 95, 97). In short, Plaintiff's filings consume a disproportionately large amount of this Court's judicial resources as compared to other pro se or even the prisoner litigant population at large.

[2] This is not plaintiff's first attempt to initiate a class action. On November 13, 2017, plaintiff sought to join a class action with two other inmates. *See Brown v. State of Ohio*, Case No. 1:17-cv-764 (S.D. Ohio Nov. 13, 2017) (Dlott, J.; Litkovitz, M.J.). Although plaintiff was not the purported head of the class action in that matter, the complaint submitted appears to be plaintiff's handwriting. The complaint was dismissed pursuant to 28 U.S.C. § 1915, after the Court noted that the plaintiff could not advance the claims of Mr. Foster and the other purported class member. (*See* Doc. 4 at PageID 56; Doc. 5). Plaintiff also filed a motion to amend/correct his complaint in Case No. 1:16-cv-920 in order to bring his case as a class action on behalf of all inmates at SOCF. On March 28, 2018, the undersigned recommended that plaintiff's motion be denied and that plaintiff's complaint should be limited to alleged violations of his own federal rights.

class consisting of himself and five other SOCF inmates, Donnell Perry, Matthew Hinston, Mark Hinston, Ronald Price, and Maurice French. (*See* Doc. 1-1, Complaint at PageID 45, 63). Foster claims that he initiated this action after he "came across several others that have issues that support the conclusion of widespread neglect, brutality, deliberate indifference, and overall cruel and unusual punishment." (*Id.* at PageID 47–48).

As an initial matter and as Foster is aware, *see supra n.2*, he "lacks standing to assert the constitutional rights of other prisoners" and is not permitted as a pro se litigant to bring a class action lawsuit concerning prison conditions. *See Dodson v. Wilkinson,* 304 F. App'x 434, 438 (6th Cir. 2008) (and cases cited therein); *see also White v. Kasich,* No. 2:12-cv-1125, 2013 WL 941440, at *10 (S.D. Ohio Mar. 8, 2013) (Deavers, M.J.) (Report & Recommendation) (explaining that the reason pro se prisoners are generally prohibited from bringing class actions is because they are unable to "adequately to represent the interests of the class"), *adopted,* 2013 WL 1281887 (S.D. Ohio Mar. 27, 2013) (Smith, J.); *Brown v. Collins,* No. 2:07-cv-826, 2008 WL 818793, at *2 (S.D. Ohio Mar. 24, 2008) (Kemp, M.J.; Frost, J.) (citing *Palasty v. Hawk,* 15 F. App'x 197, 200 (6th Cir. 2001)) (same); *Marcum v. Jones,* No. 1:06-cv-108, 2006 WL 543714, at *1 (S.D. Ohio Mar. 3, 2006) (Dlott, J.) (and cases cited therein) (holding that the pro se inmate "may bring his own claims to federal court without counsel, but not the claims of others"). Therefore, Foster's complaint should be limited to alleged violations of his own federal rights. *Cf. Dodson,* 304 F. App'x at 438.

Furthermore, to the extent that the other individuals named as plaintiffs in this case seek to join Foster in this action, they have not paid the filing fee, moved for leave to proceed *in forma pauperis*, or signed the complaint. *See* Fed. R. Civ. P. 11. In any event, the allegations set

2

forth relating to the additional purported plaintiffs involve the actions of different SOCF employees, arise out of different transactions or occurrences, and involve distinct questions of law and fact.  *See* Fed. R. Civ. P. 20(a)(1).[3]  *See also Crawford v. Prison Health Services*, No. 1:12-cv-409, 2012 WL 4740219, at *1 (W.D. Mich. Oct. 3, 2012) (noting that multiple plaintiffs cannot pass the two-part test of Rule 20(a)(1) where each plaintiff provides a different factual background giving rise to their "mutual" cause of action).

As discussed below, Foster's allegations in the complaint relate to a March 19, 2018 attack by approximately nine officers and Lieutenants Joseph and Setty and several threats that preceded it.  With respect to the other purported plaintiffs, Foster alleges Perry was attacked by recreation supervisor Mummert and officers Hitch and Easter on February 25, 2018.  (*See* Doc. 1-1 Complaint at PageID 48, 65).  Plaintiff claims Mark and Matthew Hinston went on a hunger strike in response to prison conditions and alleged inadequate access to inmate mail.  (*Id.* at PageID 49–51).  With respect to French, plaintiff alleges that French went on suicide watch after witnessing another inmate's death and in response to prison conditions at SOCF.  (*Id.* at PageID 52–53).  Foster claims that Price's relationships suffer due to his difficulty accessing his mail through the prisons J-pay mail system.  (*Id.* at PageID 53–54).  Although Foster generally alleges that he also experiences the alleged conditions, the allegations regarding the other purported plaintiffs involve the actions of different individuals, arise out of different transactions or occurrences, and involve distinct questions of law and fact.  Accordingly, if the purported plaintiffs wish to seek relief in this Court they may file their own complaint and seek leave to proceed *in forma pauperis* or pay the filing fee required to commence a civil suit.  *See* Fed. R.

---

[3] Fed. R. Civ. P. 20(a)(1) allows permissive joinder of plaintiffs in a single action if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

Civ. P. 21.

Turning to Foster's motion for leave to proceed *in forma pauperis*, a prisoner's right to proceed *in forma pauperis* has been restricted by Congress.  In accordance with section 804(d) of the Prison Litigation Reform Act (PLRA) of 1995, Pub. L. No. 104-134, 110 Stat. 1321, amending 28 U.S.C. § 1915:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Mr. Foster is prohibited by § 1915(g) from proceeding *in forma pauperis* in this case because three prior complaints filed by him while he has been a prisoner were dismissed with prejudice at the screening stage for failure to state a claim upon which relief may be granted. *See, e.g., Christopher Foster v. City of Cincinnati, et al.,* Case No. 1:14-cv-617 (S.D. Ohio June 22, 2015) (Barrett, J.; Bowman, M.J.) (Docs. 4, 20, 23-24); *Christopher Foster v. State of Ohio, et al.*, Case No. 1:14-cv-668 (S.D. Ohio Nov. 3, 2014) (Beckwith, J.; Litkovitz, M.J.) (Docs. 4, 7-8); *Christopher Foster v. Hamilton Cnty., et al.,* Case No. 1:14-cv-642 (S.D. Ohio Oct. 20, 2014) (Black, J.; Litkovitz, M.J.) (Docs. 4, 7-8).  The previous three screening dismissals prevent the Foster from obtaining pauper status in the instant action.

In view of his three "strikes," Mr. Foster may not proceed *in forma pauperis* unless he falls within the statutory exception set forth in 28 U.S.C. § 1915(g), which applies to prisoners who are "under imminent danger of serious physical injury."  Under the plain language of the statute, plaintiff must be in imminent danger at the time that he seeks to file his suit in federal

4

court to qualify for the exception to the "three strikes" provision of § 1915(g). *See Vandiver v. Vasbinder,* 416 F. App'x 560, 561-62 (6th Cir. 2011) (and cases cited therein) (holding in accordance with other circuit courts that "the plain language of § 1915(g) requires the imminent danger to be contemporaneous with the complaint's filing"); *accord Chavis v. Chappius,* 618 F.3d 162, 169 (2nd Cir. 2010) (citing *Malik v. McGinnis*, 293 F.3d 559, 563 (2nd Cir. 2002)); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3rd Cir. 2001) (en banc); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999); *Banos v. O'Guin*, 144 F.3d 883, 884 (5th Cir. 1998) (per curiam); *Chase v. O'Malley*, 466 F. App'x 185, 186-87 (4th Cir. 2012) (per curiam). *Cf. Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007). "By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred." *Abdul-Akbar*, 239 F.3d at 315.

In this case, Foster alleges that he was attacked by SOCF staff on March 19, 2018.[4] Prior to the attack, plaintiff alleges that C/O Johnson threatened his life, before showing up to his cell with a can of mace. According to Foster, he could only protect himself by expelling the contents of his toilet at Johnson. Foster further alleges that he refused Johnson and Sgt. Smoot's efforts "to get Foster to put on handcuffs to pull him out of the cell and kill him." (*Id.* at PageID 56). During this time Foster alleges that Johnson said "I told you I was going to kill you." (*Id.*). Foster claims that Smoot subsequently emptied a quart-sized can of pepper spray into his cell.

---

[4] Without any factual elaboration, plaintiff also claims he was attacked on February 8th, 9th, and 21st. However the only allegations concerning these dates are that "on the 9th, C.O. Johnson made it clear that he wanted to be the one to harm Foster. On or about the 23rd at 1:45 PM (1345) of February he said something to this degree." (Doc. 1-1, PageID at 55).

5

Foster further claims Smoot and Johnson "[b]ragged that they were preparing to kill Foster." (*Id.* at PageID 57).

Approximately thirty to sixty minutes later, Lieutenants Setty and Jason Joseph came to Foster's cell with a wheelchair and a handheld camera, according to the complaint. Foster claims he was handcuffed and shackled, before Setty and Joseph began to transport him to K-2. During the course of the transfer, however, Foster claims that Joseph and Neff devised a plan to attack him. According to Foster, Joseph falsely stated that Foster was experiencing chest pains so that he could transport him to the infirmary. Joseph allegedly told Foster "that he was about to be dealt with for the lawsuits and because he did not cuff up for him when he tried to kill Foster the first time Foster came to Lucasville." (*Id.* at Page 58). According to Foster, once in the infirmary he was attacked by approximately nine correctional officers in helmets and riot gear, along with Lieutenants Setty and Joseph. Plaintiff alleges that "Deputy Warden Cool and Major Warren told Foster they are preparing to make it look good and murder him or otherwise send him to O.S.V.." (*Id.* at PageID 59).

Following the attack, Foster claims he was transported to K-2 and placed in a suicide cell despite the fact that he was not suicidal. Foster claims that Englehart and Hutchinson denied him meals while in K-2. Approximately a week before the attack, on March 10, 2018, Foster claims that officers slammed his hand in the food hatch. He further alleges that the nurse charged him for looking at his hand out of retaliation. When he did receive food, Foster claims that "he received punishment meals that were consisting of what appeared to be smashed up food in a disgusting pile, with orange pills all inside of it. Foster attempted to eat the food but his mouth went numb literally on the first bite, he could not tell if it was pills or just the flavor of the orange

6

peels but—pills as in drugs—it was spat out and [i]nedible." (*Id.* at PageID 60). Foster claims this persisted from March 8 until March 20 or 21, 2018.[5]

The Court is unable to discern from Foster's complaint any factual allegations suggesting he was in imminent danger of serious physical injury at the time he filed his complaint. As noted above, Foster claims that he was threatened prior to and during an attack that occurred on March 19, 2018 and was denied meals and/or retaliated against from March 8 to March 21, 2018. While Foster's allegations are serious, they are insufficient to satisfy the imminent danger because they concern past harms. *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) ("a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the [imminent danger] exception").

Foster's general or conclusory allegations of "contemporaneous imminent danger" are also insufficient to meet the standard. Foster appears to be of the belief that the conditions at SOCF have resulted in an ongoing state of imminent danger.[6] However, a plaintiff who seeks to invoke the imminent danger exception must allege particular facts showing immediate or impending serious physical injury in existence at the time he commenced this action. *See e.g.*, *Calton v. Wright*, No. 6:12-cv-344, 2012 WL 3135682, at *2 (E.D. Texas Aug. 1, 2012) (rejecting an "ongoing danger theory" resulting from past events on the basis that this theory would provide a blanket exception to 28 U.S.C. § 1915(g)). Furthermore, to the extent that

---

[5] The complaint also includes allegations regarding Foster's confinement in the limited privileges unit, that he has witnessed guard brutality against other inmates, as well as allegations related to his access to showers, exercise time, phone, legal mail, and commissary. As he has in his prior complaints, Foster claims that his cell is not wheelchair accessible. *See e.g.*, *Foster v. Ohio*, Case No. 1:16-cv-920 (S.D. Ohio Sept. 13, 2016) (Black, J.; Bowman, M.J.).

[6] Foster summarizes this case as "a matter of contemporaneous imminent danger in class action" and claims that "[t]he imminent contemporaneous danger is a wide-spread customary implication of the Lucasville Dept. of Rehab. & Corr. Facility's structure and routine interactions between staff and prisoners. The imminent contemporaneous danger has increased and become a reoccurring event." (Doc. 1-1, Complaint at PageID 46, 62).

Foster may contend that he is subject to imminent physical danger based on ongoing retaliation or harassment due to his filing prior lawsuits, his allegations are also insufficient. *See Abdul*, 239 F.3d at 315, n.1 (rejecting an imminent danger claim based on allegations that the plaintiff was pepper sprayed, combined with claims that prison officials engaged in "continuing harassment, plots to hurt or kill him, and other forms of retaliation"); *Avent v. Fisher*, No. 9:07-cv-1135, 2008 WL 5000041, at *6 (N.D.N.Y. Nov. 20, 2008) (noting that while it may be conceivable that a past assault "with a specific threat of another such assault in the near future, may suffice to allege an 'imminent danger' on the date of filing . . . unless the prospect of such a future assault is so specific and/or likely as to be deemed *real*, such an allegation will not suffice to allege an 'imminent danger' on the date of filing.'"). Thus, although the complaint includes allegations that officers have retaliated against him and threatened him prior to the March 19, 2018 attack, the complaint fails to allege particular facts showing any immediate or impending serious physical injury in existence at the time he commenced this action.

In fact, in *Foster v. State of Ohio*, No. 3:15-cv-2256 (N.D. Ohio Feb. 11, 2016), the Court found that Foster's similar allegations in that case—that corrections officers "have made it clear they are trying to kill me" following a prior attack and put unknown food substances in his meals—provided no indication that Foster was in imminent danger at the time he filed the complaint. *See Foster,* No. 3:15-cv-2256 (Doc. 7 at PageID 28–29; Doc. 10). Foster has similarly failed to allege particular facts suggesting he was in imminent danger of serious physical harm at the time he filed his complaint in this case. Accordingly, Foster does not meet the exception to the "three strikes" rule set forth in 28 U.S.C. § 1915(g).

8

**IT IS THEREFORE RECOMMENDED THAT:**

1. Foster's motion to proceed *in forma pauperis* (Doc. 1) be **DENIED.**

2. Foster be ordered to pay the full $400 fee ($350 filing fee plus $50 administrative fee) required to commence this action within thirty (30) days, and that Foster be notified that his failure to pay the full $400 fee within thirty days will result in the dismissal of his action. *See In re Alea*, 286 F.3d 378, 382 (6th Cir. 2002).

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

CHRISTOPHER FOSTER,  
    Plaintiff,

vs.

DONNELL PERRY, *et al.*,  
    Defendants.

Case No. 1:18-cv-247

Black, J.  
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).